**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HELEN BINDER, | : |
| Plaintiff, | :   **Civil Action No.** |
| vs. | : |
| UNITED STATES OF AMERICA, ACTING BY AND THROUGH THE UNITED STATES COAST GUARD, and XYZ AGENCIES 1-10 (said names being fictitious government agencies and/or departments) | :   **COMPLAINT** |
| | : |
| | : |
| | : |
| Defendants. | : |

Plaintiff, Helen Binder (hereinafter referred to as "Helen Binder" or "Plaintiff") alleging, upon knowledge as to herself and her own acts, and upon information and belief with respect to all other matters and by way of complaint against defendant, the United States of America, acting by and through the United States Coast Guard (hereinafter referred to as the "Coast Guard" or "Defendant") and XYZ Agencies 1-10 (said names being fictitious government agencies and departments) says:

## NATURE AND BASIS OF THE ACTION

1.      This action seeks the Court's review and setting aside of the final agency action undertaken by the Coast Guard in which it unilaterally concluded that Plaintiff, Helen Binder, individually, is a responsible party under Section 1002(a) of the Oil Pollution Act, 33 U.S.C. §2702(a) for costs incurred by the Oil Spill Liability Trust Fund with respect to a U.S. Coast Guard-led removal action following a January 11, 2016 fuel oil spill from the former and

abandoned Bee-Line Fuel Oil Company located in Mansfield Township, Warren County, New Jersey.

2.     As established in this Complaint, the Coast Guard's unilateral determination to hold Helen Binder personally liable for the costs it incurred to remove the discharge of fuel oil from the abandoned oil tanks located on the former Bee-Line Fuel Oil Site in Mansfield Township into the Musconetcong River was arbitrary and capricious in violation of the Administrative Procedure Act.  The Coast Guard's actions further deprived Helen Binder of her procedural and substantive due process rights guaranteed by the Fifth Amendment to the United States Constitution through its failure to provide Plaintiff with adequate notice and/or convene an administrative hearing in her defense.

3.     Moreover, because liability under the Oil Pollution Act is status-based and not fault-based, and given the fact that ownership and/or operational status of real property is based on New Jersey State law, the Coast Guard's unilateral actions in imposing liability and garnishing Plaintiff's Social Security wages in an effort to reimburse the Oil Spill Liability Trust Fund are clearly erroneous.

4.     In fact, the evidence indisputably demonstrates that the Estate of August Binder remains the record owner of the former Bee-Line Fuel Oil Site and that Helen Binder never owned and/or conducted any operations as required by the Oil Pollution Act,

5.     As such, in the event any liability was imposed by the Coast Guard with respect to the response costs it incurred for the removal action it conducted from approximately January 12, 2016 through approximately March 11, 2016, such liability is properly limited by the Oil Pollution Act against the Estate of August Binder and not against Helen Binder personally.

6.     For these reasons and the reasons that follow, Helen Binder seeks a review and determination by this Court declaring that the Coast Guard's final agency action is invalidated and set aside as to Helen Binder personally, and enjoining the Coast Guard and/or its agents from executing, levying, and/or garnishing her wages obtained from the United States Social Security Department.

## THE PARTIES

7.     Plaintiff, Helen Binder ("Helen Binder" or "Plaintiff") is an individual and resident of the State of New Jersey.  Plaintiff's Social Security wages are being garnished by the United States Coast Guard and/or its agents as a result of its unilateral and erroneous determination that Plaintiff is a responsible party as that term is defined by the Oil Pollution Act, 33 U.S.C. §2702, et seq.

8.     Defendant, United States of America, by and through the United States Coast Guard ("Coast Guard" or "Defendant") is the lead federal agency for planning and response to environmental emergencies in navigable waterways, coastal zones, and major inland water bodies, such as oil spills. 33. U.S.C. §1321(j).  The Coast Guard ensures that requirements of applicable laws are followed and enforced and it was responsible for issuing the final agency action that imposed liability against Helen Binder personally under the Oil Pollution Act.

9.     Plaintiff alleges, upon information and belief, that defendants XYZ Agencies 1-10, inclusive, are government agencies of the United States of America or other governmental departments which have or continue to operate as federal agencies or departments responsible for issuing rulings under the Oil Pollution Act and Administrative Procedure Act. Such governmental agencies or entities are subject to the jurisdiction of any court of competent jurisdiction in the United States.  The names of such governmental agencies or entities are

unknown to Plaintiff at the present time. At such time as Plaintiff ascertains the true names and capacities of the aforesaid defendants, Plaintiff will seek leave to amend this complaint to insert the true names and capacities of said defendants.

## JURISDICTION AND VENUE

10.     Jurisdiction exists under 28 U.S.C. §1361, the Court's admiralty and maritime jurisdiction, 28 U.S.C. §1333, and as a civil action arising under the United States Constitution and the laws of the United States pursuant to 28 U.S.C. §1331, including the Oil Pollution Act of 1990, 33 U.S.C. §§2700-2762 and its attendant regulations, and the Administrative Procedure Act, 5 U.S.C. §§701-706.  Helen Binder also seeks a declaratory judgment and further relief pursuant to 28 U.S.C. §§2201-2202 and 5 U.S.C. §703.  Helen Binder has the right to bring this action to seek judicial review of final agency action pursuant to the Administrative Procedure Act, 5 U.S.C. §§701-706.   The Administrative Procedure Act expressly waives sovereign immunity of the Defendant for the actions alleged herein.

11.     Venue is proper in this Court pursuant to Section 1017(b) of the Oil Pollution Act, 33 U.S.C. §2717(b) and 28 U.S.C. §1391(b) because it is the judicial district in which the discharge and the resulting response and removal actions occurred.

## STATUTORY AND REGULATORY BACKGROUND

12.     Congress enacted the Oil Pollution Act of 1990 ("OPA") in response to the catastrophic Exxon-Valdez oil spill in 1989, and the insufficient emergency response to that damaging oil spill.

13.     OPA Section 1002(a), 33 U.S.C. §2702(a), provides that "each responsible party for . . . a facility form which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines . . . is liable for the

removal costs and damages specified in subsection (b) of this section [33 U.S.C. §2702(b)] that result from such incident."

14.     OPA Section 1001(7), 33 U.S.C. §2701(7), defines "discharge" to mean "any emission (other than natural seepage), intentional or unintentional" and to include "spilling, leaking, pumping, pouring, emitting, emptying, or dumping[.]"

15.     OPA Section 1001(9), 33 U.S.C. §2701(9), defines "facility" to mean "any structure, group of structures, equipment, or device (other than a vessel) which is used for one or more of the following purposes: . . . storing, handling, [or] transferring . . . oil."

16.     OPA Section 1001(14), 33 U.S.C. §2701(14), defines "incident" to mean "any occurrence or series of occurrences having the same origin, involving one or more . . . facilities . . . resulting in the discharge or substantial threat of discharge of oil[.]"

17.     OPA Section 1001(21), 33 U.S.C. §2701(21), defines "navigable waters" as the waters of the United States, including the territorial sea[.]"

18.     OPA Section 1001(23), 33 U.S.C. §2701(23), defines "oil" to mean "oil of any kind or in any form, including petroleum, fuel oil, sludge, oil refuse, and oil mixed with wastes other than dredged soil[.]"

19.     OPA Section 1001(24), 33 U.S.C. §2701(24), defines "onshore facility" to mean "any facility (including, but not limited to, motor vehicles and rolling stock) of any kind located in, on, or under, any land within the United States other than submerged land[.]"

20.     OPA Section 1001(26)(A)(ii), 33 U.S.C. §2701(26), defines "owner or operator" to mean, "in the case of an onshore facility, offshore facility, or foreign offshore unit or other facility located seaward of the exclusive economic zone, any person or entity owning or operating such[.]"

21.     OPA Section 1001(26)(A)(iv), 33 U.S.C. §2701(26), further defines "owner or operator" to mean, "in the case of any facility, title or control of which was conveyed due to bankruptcy, foreclosure, tax delinquency, abandonment, or similar means to a unit of State or local government, any person who owned, operated, or otherwise controlled activities at such facility immediately beforehand[.]"

22.     OPA Section 1001(26)(A)(vi), 33 U.S.C. §2701(26), further defines "owner or operator" to mean, "notwithstanding subparagraph (B)(ii), a person that is a lender and that holds indicia of ownership primarily to protect a security interest in a vessel or facility if, while the borrower is still in possession of the vessel or facility encumbered by the security interest, the person— (I) exercises decision making control over the environmental compliance related to the vessel or facility, such that the person has undertaken responsibility for oil handling or disposal practices related to the vessel or facility; or (II) exercises control at a level comparable to that of a manager of the vessel or facility, such that the person has assumed or manifested responsibility—(aa) for the overall management of the vessel or facility encompassing day-to-day decision making with respect to environmental compliance; or (bb) over all or substantially all of the operational functions (as distinguished from financial or administrative functions) of the vessel or facility other than the function of environmental compliance[.]"

23.     OPA Section 1001(27), 33 U.S.C. §2701(27), defines "person" to mean an "individual, corporation, partnership, [or] association[.]"

24.     OPA Section 1001(30), 33 U.S.C. §2701(30), defines "remove" and "removal" to mean "containment and removal of oil or a hazardous substance from water and shorelines or the taking of other actions as may be necessary to minimize or mitigate damages to the public health

or welfare, including, but not limited to, fish, shellfish, wildlife, and public and private property, shorelines, and beaches[.]"

25.     OPA Section 1001(31), 33 U.S.C. §2701(31), defines "removal costs" to mean "the costs of removal that are incurred after a discharge of oil has occurred or, in any case in which there is a substantial threat of a discharge of oil, the costs to prevent, minimize, or mitigate oil pollution from such an incident[.]"

26.     OPA Section 1001(32)(B), 33 U.S.C. §2701(32), defines "responsible party" to mean, "in the case of an onshore facility (other than a pipeline), any person owning or operating the facility, except a Federal agency, State, municipality, commission, or political subdivision of a State, or any interstate body, that as the owner transfers possession and right to use the property to another person by lease, assignment, or permit[.]"

27.     OPA Section 1001(32)(G), 33 U.S.C. §2701(32), further defines "responsible party" to mean, "in the case of an abandoned vessel, onshore facility, deepwater port, pipeline, offshore facility, or foreign offshore unit or other facility located seaward of the exclusive economic zone, the persons or entities that would have been responsible parties immediately prior to the abandonment of the vessel or facility.

28.     OPA Section 1002(b), 33 U.S.C. §2702(b), provides that the "removal costs" referred to in Section 1002(a) of the OPA, include "(A) all removal costs incurred by the United States . . . under subsection (c), (d), (e) or (l) of Section 1321 of this title [Section 311 of the Clean Water Act, 33 U.S.C. §1321] . . .; and (B) any removal costs incurred by any person for acts taken by the person which are consistent with the National Contingency Plan [40 C.F.R. Part 300 ("NCP")]."

29.     Federal removal actions are funded through the Oil Spill Liability Trust Fund (the "Fund").  The Fund is administered by the Coast Guard's National Pollution Funds Center and financed in part by recoveries from responsible parties.

30.     Pursuant to OPA Section 1012(a)(4), 33 U.S.C. §2712(a)(4), the Fund is authorized to reimburse persons for uncompensated removal costs determined to be consistent with the NCP.

## FACTUAL BACKGROUND

**A.     The Bee-Line Fuel Oil Site**

31.     The Bee-Line Fuel Oil Site ("Subject Site") is located at 17 Heiser Road in Mansfield Township, New Jersey.  It was formerly owned by August C. Binder and operated by Bee-Line Fuel Oil Corporation as a fuel oil distributor and supplier from approximately 1963 to 2002.

32.     The Subject Site contained five (5) above-ground fuel storage tanks, including three (3) 15,000-gallon capacity tanks, one (1) 18,000-gallon capacity tank, and one (1) 30,000-gallon capacity tank.

33.     The Subject Site is located in a rural, heavily forested area of Warren County, New Jersey.  It is located within fifty (50) feet of a stream that fees into the Musconetcong River, a tributary of the Delaware River.

34.     August Binder passed away in 2014.  Title and ownership to the Subject Site was absorbed into the Estate of August Binder after his death in 2014.   The Estate of August Binder presently maintains ownership of the Subject Site.

35.     Plaintiff, Helen Binder is not now, nor has ever been the record owner of title to the Subject Site.  Rather, the Subject Site was owned solely and entirely by August Binder until his passing in 2014 and is now owned by the Estate of August Binder.

36.     In addition, Helen Binder was never a shareholder or an owner of Bee Line Fuel Oil Corporation.

**B.     The January 12, 2016 Incident**

37.     On or around January 10, 2016, the New Jersey Department of Environmental Protection's Emergency Management Program ("DEP") responded to a report of oil sheen in a tributary to the Musconetcong River allegedly emanating from the Subject Site.

38.     On or around January 11, 2016, DEP responders dug interceptor trenches to stem the fuel flow and divert any oil product and emptied any remaining fuel oil from the tanks on the Subject Site.

39.     DEP also deployed a sorbent boom and a hard boom to collect any product or sheen from the stream and at the confluence of the Musconetcong River

40.     On or around January 12, 2016, DEP referred the matter to the United States Environmental Protection Agency's Region II Emergency Removal Branch ("EPA") with a request to assist it and to conduct a removal action.

41.     In response to the referral of the Subject Site by DEP, funding and authorization to initiate response efforts was issued by the Coast Guard by which an environmental consultant and contractor was selected to conduct the removal action.

42.     From approximately January 13, 2016 through March 11, 2016, the Coast Guard, through its environmental consultant and contractor and recovered gallons of oil/water mixture

from the interceptor trench dug by DEP and excavated and transported allegedly contaminated soil to an off-site disposal location.

43.     In or around February 19, 2016, the Coast Guard and its environmental contractors also collected drinking water samples for the three (3) residences adjacent to the Subject Site and the water samples analysis indicated non-detect concentrations for both diesel-range organics and total petroleum hydrocarbons demonstrating that no contamination migrated off the Subject Site.

> **C.**     **EPA and the Coast Guard's Unilateral Final Agency Action Declaring Helen Binder a Responsible Party Under the Oil Pollution Act Despite No Evidence of Either Her Ownership and/or Operation of the Subject Site and in the Absence of a Fair Hearing**

44.     On January 26, 2016, Helen Binder received a letter and Notice of Federal Interest in an Oil Pollution Incident from EPA's Response and Prevention Branch.

45.     EPA's January 26, 2016 letter provided in relevant part that:

> This letter and the accompanying Notice of Federal Interest are intended to give you, **if you are the owner or operator of the property**, the opportunity to undertake and promptly perform the cleanup.

> This brings up the issue of who is defined as a responsible party. . . **Whether a surface owner is an owner or operator of the facility, and thus a responsible party under the law, is a very fact-specific determination**.  That determination depends on a number of factors, including the terms of any lease, the type and length of operations conducted, the surface owner's involvement in operations, and various provisions of state law, among other factors. (*Letter from Kelli Lucarino, Federal On-Scene Coordinator, U.S. EPA Region 2, dated January 26, 2016*) (emphasis added).

46.     On or around July 14, 2021, Helen Binder received a letter from the Coast Guard providing in relevant part that:

> The Oil Pollution Act of 1990 (33 USC 2701 et seq) provides that the Owner and/or Operator is responsible for the costs incurred. . . Based on the information we have received regarding this case, the National Pollution Funds Center has

determined that you are liable for these costs. (*Letter from Tyler C. Krulla, Case Officer, U.S. Coast Guard, dated July 14, 2021*).

47.     Included within the Coast Guard's July 14, 2021 to Helen Binder was an invoice in the amount of $561,326.41.

48.     On or around January 5, 2022, Tyler C. Krulla of the U.S. Coast Guard sent e-mail correspondence stating that, "[b]ased on the facts of the case, the Oil Pollution Act of 1990 and state property laws, it is the Federal Government's position that Helen Binder is the Responsible Party for this pollution incident.  (*E-Mail from Tyler C. Krulla, Case Officer, U.S. Coast Guard, dated January 5, 2022*).

49.     On or around January 12, 2022, Helen Binder received a notice from the U.S. Department of Treasury, Bureau of the Fiscal Service stating that the Bureau of Fiscal Service applied her payment from the Social Security Administration to the delinquent debt she owed.

50.     The statements and positions maintained by the Coast Guard regarding the ownership/operations status of the Subject Site and their unilateral determination that Helen Binder qualified as a "responsible party" as that term is defined by the Oil Pollution Act despite their own overt recognition that, "[w]hether a surface owner is an owner or operator of the facility, and thus a responsible party under the law, is a very fact-specific determination", were clearly erroneous given the fact that the Subject Site was never owned and/or operated by Helen Binder, and thus, such statements, positions and determinations by the Coast Guard were arbitrary, capricious, and an abuse of discretion not otherwise in accordance with law.

51.     Moreover, the statements and positions maintained by the Coast Guard regarding the ownership/operations status of the Subject Site and their unilateral determination that Helen Binder qualified as a "responsible party" as that term is defined by the Oil Pollution Act were

made while depriving Plaintiff of all due process rights, including, but not limited to, the right to an impartial hearing.

52.     Whether caused by governmental error or discriminatory intent, the result of the Coast Guard's unilateral determination that Helen Binder qualified as a "responsible party" as that term is defined by the Oil Pollution Act is arbitrary, capricious and an abuse of discretion constituting inequitable treatment.

53.     The Coast Guard's unilateral determination that Helen Binder qualified as a "responsible party" as that term is defined by the Oil Pollution Act has harmed and will continue to harm Helen Binder because such unilateral determination has deprived Plaintiff of her Social Security benefits and has required her to expend sums for her defense in connection with the Subject Site.

## COUNT I

## ADMINISTRATIVE PROCEDURE ACT

**(Request to Vacate the Administrative Order Determining Helen Binder to be a Responsible Party Under the Oil Pollution Act and all Actions Taken Therunder by the Coast Guard, the National Pollution Funds Center, and the Department of Treasury's Debt Management Service)**

54.     Helen Binder repeats the allegations of paragraphs 1 through 53 hereof as if set forth at length herein.

55.     Under 5 U.S.C. §706, the Court is granted broad authority to review a final agency decision.

56.     Specifically, the Court can decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of the agency actions.

57.     The Court also has the legal authority to order and compel agency action that is unlawfully withheld or unreasonably delayed; to hold unlawful and set aside agency action, findings and conclusions determined to be arbitrary, capricious, an abuse of discretion and not otherwise in accordance with law; contrary to a constitutional right, power, privilege, or immunity; or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; without observance of procedure required by law; unsupported by substantial evidence; and unwarranted by the facts.

58.     In accordance with 5 U.S.C. §706, the Court should vacate the Administrative Order Determining Helen Binder to be a Responsible Party Under the Oil Pollution Act and all Actions Taken Therunder by the Coast Guard, the National Pollution Funds Center, and the Department of Treasury's Debt Management Service, as being arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

59.     The statements and positions maintained by the Coast Guard regarding the ownership/operations status of the Subject Site and their unilateral determination that Helen Binder qualified as a "responsible party" as that term is defined by the Oil Pollution Act despite their own overt recognition that, "[w]hether a surface owner is an owner or operator of the facility, and thus a responsible party under the law, is a very fact-specific determination", were clearly erroneous given the fact that the Subject Site was never owned and/or operated by Helen Binder, and thus, such statements, positions and determinations by the Coast Guard were arbitrary, capricious, and an abuse of discretion not otherwise in accordance with law.

60.     OPA Section 1001(26)(A)(ii), 33 U.S.C. §2701(26), defines "owner or operator" to mean, "in the case of an onshore facility, offshore facility, or foreign offshore unit or

other facility located seaward of the exclusive economic zone, any person or entity owning or operating such[.]"

61.     OPA Section 1001(26)(A)(iv), 33 U.S.C. §2701(26), further defines "owner or operator" to mean, "in the case of any facility, title or control of which was conveyed due to bankruptcy, foreclosure, tax delinquency, abandonment, or similar means to a unit of State or local government, any person who owned, operated, or otherwise controlled activities at such facility immediately beforehand[.]"

62.     OPA Section 1001(26)(A)(vi), 33 U.S.C. §2701(26), further defines "owner or operator" to mean, "notwithstanding subparagraph (B)(ii), a person that is a lender and that holds indicia of ownership primarily to protect a security interest in a vessel or facility if, while the borrower is still in possession of the vessel or facility encumbered by the security interest, the person— (I) exercises decision making control over the environmental compliance related to the vessel or facility, such that the person has undertaken responsibility for oil handling or disposal practices related to the vessel or facility; or (II) exercises control at a level comparable to that of a manager of the vessel or facility, such that the person has assumed or manifested responsibility—(aa) for the overall management of the vessel or facility encompassing day-to-day decision making with respect to environmental compliance; or (bb) over all or substantially all of the operational functions (as distinguished from financial or administrative functions) of the vessel or facility other than the function of environmental compliance[.]"

63.     OPA Section 1001(32)(B), 33 U.S.C. §2701(32), defines "responsible party" to mean, "in the case of an onshore facility (other than a pipeline), any person owning or operating the facility, except a Federal agency, State, municipality, commission, or political subdivision of

a State, or any interstate body, that as the owner transfers possession and right to use the property to another person by lease, assignment, or permit[.]"

64.     OPA Section 1001(32)(G), 33 U.S.C. §2701(32), further defines "responsible party" to mean, "in the case of an abandoned vessel, onshore facility, deepwater port, pipeline, offshore facility, or foreign offshore unit or other facility located seaward of the exclusive economic zone, the persons or entities that would have been responsible parties immediately prior to the abandonment of the vessel or facility.

65.     An investigation of the land records for the Subject Site illustrates that Helen Binder is not, nor has ever been the record owner of title.

66.     Rather, the Subject Site was owned by August Binder until his passing in 2014 and is now owned by the Estate of August Binder.

67.     As such, because the Subject Site was owned solely by August Binder, there is no joint tenancy and/or tenancy by the entirety relationship by and between the Subject Site and Helen Binder.

68.     In addition, Helen Binder was never a shareholder or owner of Bee Line Fuel Oil Corporation, the operator at the Subject Site and had no involvement whatsoever with Bee Line Fuel Oil Corporation's operations.

69.     Helen Binder never exercised any decision making control over the environmental compliance related to the Bee Line Fuel Oil Corporation or the Subject Site.

70.     Helen Binder never undertook any responsibility for oil handling or disposal practices related to the Bee Line Fuel Oil Corporation or the Subject Site

71.     Helen Binder never exercised any control at a level comparable to that of a manager of the Bee Line Fuel Oil Corporation or the Subject Site, such that she assumed or

manifested either responsibility for the overall management of the Subject Site encompassing day-to-day decision making with respect to environmental compliance; or over all or substantially all of the operational functions of the Subject Site.

72.     Helen Binder does not fall within any of the categories of responsible parties as enumerated and defined by OPA and cannot be determined to be responsible for any portion of the response costs allegedly incurred by the Coast Guard and/or EPA in this case.

73.     As such, in the event any party is determined to be a "responsible party" as that term is defined by the OPA, such determination is limited to the Estate of August Binder as owner of the Subject Site, and not against Helen Binder personally.

74.     Moreover, because ownership status of real property is based on state law, New Jersey's rules governing the personal liability for obligations of an executor or executrix arising from the ownership or control of an estate apply.

75.     N.J.S.A. 3B:14-32 provides that, "[a] fiduciary is individually liable for obligations arising from ownership or control of the estate or for torts committed in the course of administration of the estate only if he [or she] is personally at fault."

76.     There has never been any allegation of fault made by the Coast Guard against Helen Binder, in her capacity as Executrix of the Estate of August Binder in this case.

77.     The Coast Guard's unilateral determination that Helen Binder qualified as a "responsible party" as that term is defined by the Oil Pollution Act has harmed and will continue to harm Helen Binder because such unilateral determination has deprived Plaintiff of her Social Security benefits and has required her to expend sums for her defense in connection with the Subject Site.

**WHEREFORE,** Plaintiff demands judgment in its favor against Defendant:

(a)     Invalidating and/or vacating the Coast Guard's Administrative Order determining Helen Binder to be the responsible party as that term is defined by the Oil Pollution Act and liable for removal costs incurred at the Subject Site and all actions taken therunder by the Coast Guard, the National Pollution Funds Center, and the Department of Treasury's Debt Management Service;

(b)     Declaring that Plaintiff, Helen Binder is not responsible party as that term is defined by the Oil Pollution Act and liable for removal costs incurred at the Subject Site;

(c)     Disgorging Defendant from any and all payments and amounts attached and/or garnished from Plaintiff's Social Security benefits;

(d)     Enjoining Defendant from attaching and/or garnishing any further wages or benefits rightfully belonging to Plaintiff from the Social Security Administration; Awarding punitive damages to Plaintiff; and

(e)     Such other relief as this Court deems just and proper.

## COUNT II

## DECLARATORY JUDGMENT ACT

78.     Helen Binder repeats the allegations of paragraphs 1 through 77 hereof as if set forth at length herein.

79.     The statements and positions maintained by the Coast Guard regarding the ownership/operations status of the Subject Site and their unilateral determination that Helen Binder qualified as a "responsible party" as that term is defined by the Oil Pollution Act despite their own overt recognition that, "[w]hether a surface owner is an owner or operator of the facility, and thus a responsible party under the law, is a very fact-specific determination", were clearly erroneous given the fact that the Subject Site was never owned and/or operated by Helen

Binder, and thus, such statements, positions and determinations by the Coast Guard were arbitrary, capricious, and an abuse of discretion not otherwise in accordance with law.

80.     By reason of the foregoing, and in accordance with 28 U.S.C. §2201 et seq. and 5 U.S.C. §703, an actual or justiciable controversy exists between Helen Binder and the Coast Guard regarding the actions undertaken by the Coast Guard at the Subject Site, and a judicial declaration is necessary to determine Helen Binder's rights and remedies.

**WHEREFORE,** Plaintiff demands judgment in its favor against Defendant:

(a)     Invalidating and/or vacating the Coast Guard's Administrative Order determining Helen Binder to be the responsible party as that term is defined by the Oil Pollution Act and liable for removal costs incurred at the Subject Site and all actions taken therunder by the Coast Guard, the National Pollution Funds Center, and the Department of Treasury's Debt Management Service;

(b)     Declaring that Plaintiff, Helen Binder is not responsible party as that term is defined by the Oil Pollution Act and liable for removal costs incurred at the Subject Site;

(c)     Disgorging Defendant from any and all payments and amounts attached and/or garnished from Plaintiff's Social Security benefits;

(d)     Enjoining Defendant from attaching and/or garnishing any further wages or benefits rightfully belonging to Plaintiff from the Social Security Administration; Awarding punitive damages to Plaintiff; and

(e)     Such other relief as this Court deems just and proper.

## COUNT III

## DENIAL OF PROCEDURAL DUE PROCESS OF LAW

81.     Helen Binder repeats the allegations of paragraphs 1 through 80 hereof as if set forth at length herein.

82.     Under the Due Process Clause of the Fifth Amendment to the United States Constitution and under the Administrative Procedure Act, 5 U.S.C. §706, Helen Binder is entitled to and is guaranteed due process of law and procedural safeguards before she may be deprived of protected property rights.  Helen Binder's constitutionally protected property rights and interests include, but are not limited to, her funds received from the United States Social Security Administration and any other funds and/or property the United States Coast Guard and/or its agents, the National Pollution Funds Center, and the Department of Treasury's Debt Management Service, have sought or may seek to garnish, attach, levy and/or execute upon in furtherance of its unilateral and erroneous determination that Helen Binder is a responsible party as that term is defined by the Oil Pollution Act for any response and/or removal costs incurred at the Subject Site.

83.     The actions and procedures taken and followed by the Coast Guard completely deprived Helen Binder of her Constitutional rights to due process of law, were inadequate by Constitutional standards, and deprived Helen Binder of a Constitutionally fair and adequate administrative process to receive reasonable notice of the final agency action and administrative order, to be heard with respect to its questions and challenges to the infirmities and factual inaccuracies contained within the final agency action and administrative order, and to discover, evaluate, and have adequate notice of the data and facts upon which the final agency action and administrative order was based.

84.     The process and procedure followed by the Coast Guard violated Helen Binder's constitutionally protected due process rights to be fairly heard and deprived Helen Binder of protected property rights without due process of law.  Defendant's conduct is Constitutionally infirm and caused Helen Binder substantial harm for the following reasons:

(a)     <u>Lack of Neutral Decision Maker</u>:  The United States, acting by and through the Coast Guard, is responsible for enforcement of the Oil Pollution Act.  The statements and positions maintained by the Coast Guard regarding the ownership/operations status of the Subject Site and their unilateral determination that Helen Binder qualified as a "responsible party" as that term is defined by the Oil Pollution Act despite their own overt recognition that, "[w]hether a surface owner is an owner or operator of the facility, and thus a responsible party under the law, is a very fact-specific determination", were clearly erroneous given the fact that the Subject Site was never owned and/or operated by Helen Binder, and thus, such statements, positions and determinations by the Coast Guard were arbitrary, capricious, and an abuse of discretion not otherwise in accordance with law that demonstrated that it was not a neutral decision maker;

(b)     <u>No Opportunity to Present Reasons Why the Proposed Action Not be Taken</u>: Defendant denied Helen Binder the opportunity to participate in an administrative hearing in her defense of the Coast Guard's erroneous factual and legal position that she was a responsible party as that term is defined by the Oil Pollution Act for response and removal costs incurred at the Subject Site;

(c)     <u>The Right to Call Witnesses and be Heard</u>:  Defendant refused to provide a fair and adequate administrative process related to the administrative order whereby Helen Binder

would have had a meaningful opportunity and fair ability to present contemporaneous and live witness testimony;

(d)     <u>The Right to Have a Decision Based on the Evidence Presented</u>:  Defendant deprived Helen Binder of her right to present evidence, exhibits and facts in rebuttal to the Coast Guard's unilateral and erroneous determination that Helen Binder was a responsible party as that term is defined by the Oil Pollution Act for response and removal costs incurred at the Subject Site;

(e)     <u>The Right to Know the Evidence Against Helen Binder</u>:  Defendant deprived Helen Binder of relevant and material information thereby depriving her of the ability to defend herself from the Coast Guard's claims and actions;

(f)     <u>The Right to Counsel</u>:  Defendant deprived Helen Binder of the opportunity to have counsel present and reasonably participate in the administrative process and in any administrative hearing; and

(g)     <u>The Right to a Statement of Reasons</u>:  Helen Binder has not been provided with a Constitutionally adequate statement of reasons concerning its position and determination that Helen Binder was a responsible party as that term is defined by the Oil Pollution Act for response and removal costs incurred at the Subject Site.

85.     In accordance with the Fifth Amendment to the United States Constitution and 5 U.S.C. §706, the administrative order and the other actions of Defendant thereunder are unlawful and should be vacated and set aside, as they violated Helen Binder's Constitutionally protected rights to due process of law.

**WHEREFORE,** Plaintiff demands judgment in its favor against Defendant:

(a)      Invalidating and/or vacating the Coast Guard's Administrative Order determining Helen Binder to be the responsible party as that term is defined by the Oil Pollution Act and liable for removal costs incurred at the Subject Site and all actions taken thereunder by the Coast Guard, the National Pollution Funds Center, and the Department of Treasury's Debt Management Service;

(b)      Declaring that Plaintiff, Helen Binder is not responsible party as that term is defined by the Oil Pollution Act and liable for removal costs incurred at the Subject Site;

(c)      Disgorging Defendant from any and all payments and amounts attached and/or garnished from Plaintiff's Social Security benefits;

(d)      Enjoining Defendant from attaching and/or garnishing any further wages or benefits rightfully belonging to Plaintiff from the Social Security Administration; Awarding punitive damages to Plaintiff; and

(e)      Such other relief as this Court deems just and proper.

## COUNT IV

## FAILURE TO COMPLY WITH THE NATIONAL CONTINGENCY PLAN

86.      Helen Binder repeats the allegations of paragraphs 1 through 85 hereof as if set forth at length herein.

87.      The National Oil and Hazardous Substances Pollution Contingency Plan, more commonly called the National Contingency Plan or ("NCP"), is the federal government's blueprint for responding to both oil spills and hazardous substance releases. The NCP is the result of efforts to develop a national response capability and promote coordination among the hierarchy of responders and contingency plans.

88.     Congress has broadened the scope of the NCP on several occasions. As required by the Clean Water Act of 1972, the NCP was revised to include a framework for responding to hazardous substance releases, as well as oil spills. The latest revisions to the NCP were finalized in 1994 to reflect the oil spill provisions of the Oil Pollution Act of 1990.

89.     The NCP further directs EPA to conduct a Remedial Investigation "to collect data necessary to adequately characterize the site for the purpose of developing and evaluating effective remedial alternatives."  40 C.F.R. §300.430(d)(1).

90.     The NCP also requires EPA to "characterize the nature of and threat posed by the hazardous substances and hazardous materials and gather data necessary to assess the extent to which the release poses a threat to human health or the environment or to support the analysis and design of potential response actions by conducting, as appropriate, field investigations."  40 C.F.R. §300.430(d)(2).

91.      Field investigations are also required under the NCP to assess such factors as "the general characteristics of the waste" and "[t]he extent to which the source can be adequately identified and characterized…."40 C.F.R. §300.430(d)(2)(iii) and (iv).

92.     Selection of the remedy and/or removal action at the Subject Site was inconsistent with the NCP because the Coast Guard and EPA failed to accurately investigate and characterize conditions at the Subject Site.

93.     Namely, the Coast Guard and EPA violated specific requirements of the NCP when it: a.) developed inadequate and inaccurate information about actual conditions at the Subject Site; b.) failed to accurately assess these conditions prior to selecting its remedy and/or removal action; c.) failed to select an appropriate remedy to respond to those conditions; and d.) failed to select a cost effective remedy.

94.     To the extent that the interceptor trenches dug by the DEP first responders to stem the fuel flow and divert any oil product from the Muscotnetcong River and its efforts to empty any remaining fuel oil from the tanks on the Subject Site was fully protective of human health and welfare and the environment, the Coast Guard's decision to continue with a removal action and disassembly of the tanks at the Subject Site was overbroad and not narrowly tailored to be in compliance with the NCP.

95.     To the extent the Coast Guard's and EPA's selection and implementation of the remedy and/or removal action at the Subject Site was inconsistent with the NCP, then their actions were arbitrary and capricious and they are consequently barred from recovering their excess costs.

**WHEREFORE,** Plaintiff demands judgment in its favor against Defendant:

(a)     Invalidating and/or vacating the Coast Guard's Administrative Order determining Helen Binder to be the responsible party as that term is defined by the Oil Pollution Act and liable for removal costs incurred at the Subject Site and all actions taken therunder by the Coast Guard, the National Pollution Funds Center, and the Department of Treasury's Debt Management Service;

(b)     Declaring that Plaintiff, Helen Binder is not responsible party as that term is defined by the Oil Pollution Act and liable for removal costs incurred at the Subject Site;

(c)     Disgorging Defendant from any and all payments and amounts attached and/or garnished from Plaintiff's Social Security benefits;

(d)     Enjoining Defendant from attaching and/or garnishing any further wages or benefits rightfully belonging to Plaintiff from the Social Security Administration; Awarding punitive damages to Plaintiff; and

(e)      Such other relief as this Court deems just and proper.

**COFFEY & ASSOCIATES**
Counsellors At Law
310 South Street
Morristown, New Jersey 07960
Attorneys for Plaintiff, Helen Binder

By:   */s/ Gregory J. Coffey*
Gregory J. Coffey
A Member of the Firm

Dated:  July 29, 2022

### DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates Gregory J. Coffey, Esq. of the law firm of Coffey & Associates, 310 South Street, Morristown, New Jersey as trial counsel in this matter.

**COFFEY & ASSOCIATES**
Counsellors At Law
310 South Street
Morristown, New Jersey 07960
Attorneys for Plaintiff, Helen Binder

By:   */s/ Gregory J. Coffey*
Gregory J. Coffey
A Member of the Firm

Dated:  July 29, 2022